## DURHAM v. DURHAM.

Where appraisers set apart to a widow and her minor children a year's support consisting of an article of personalty, an account against a named person, and a one-half interest in described realty, there was no error in dismissing on demurrer a caveat filed by this person, alleging that he did not owe the account, and that the deceased husband of the applicant did not own the personalty or any interest in the realty. The issues thus tendered, even treating the caveat as a claim to the realty and personalty set apart, were such as should have been determined elsewhere, and the demurrer properly raised the point that they could not, over the applicant's objection, be lawfully disposed of by the ordinary.

Argued March 22, — Decided April 21. 1899.

Appeal. Before Judge Hutchins. Oconee superior court. July term, 1898.

*B. E. Thrasher* and *Strickland & Green*, for plaintiff in error.
*W. M. Smith, George C. Thomas* and *Robert S. Howard*, contra.

COBB, J.    Upon the application of Mattie O. Durham ap-
praisers were appointed by the ordinary to set apart to her
and her minor children a year's support out of her husband's
estate.    In the return of the appraisers setting apart the
year's support appeared the following items: "One large
red cow and her calf, valued at $15.    Rent due A. L. Dur-
ham by H. C. Durham Jr., for half-interest in land for 1897,
$30.    To one half undivided interest in eighty-six acres of
land more or less in said county, known as part of the Tom
Epps tract in Watkinsville district, now owned by H. C.
Durham Jr., and A. L. Durham deceased, valued at $350."
At the January term of the court, H. C. Durham Jr. inter-
posed a caveat to the granting of the application, and set up
the following reasons why the return of the appraisers should
not be made the judgment of the court: (1) "Because A. L.
Durham, now deceased, and out of whose estate the year's sup-
port is claimed by applicant, neither had possession or title to
the large red cow and calf valued at $15, set apart in the re-
turn of appraisers."    (2) Because caveator "did not owe A. L.
Durham on account for rent or otherwise at the time of his
death, nor has he become so indebted since his death, in the
sum of thirty dollars or other amount." (3) Because A. L. Dur-
ham while in life did not own a one-half undivided interest in
the eighty-six acres of land described in the return, nor had
he any title or rights in the same.    The applicant demurred to
the caveat, upon the ground that the same was, in effect, a
claim to the property described in the return of the appraisers,
and that the ordinary had no jurisdiction to pass upon the
question of title thus attempted to be raised.    The demurrer
was sustained and the caveat dismissed.    The caveator ap-
pealed to the superior court, and when the case came on for
trial in that court the applicant insisted upon her demurrer
which had been filed in the court of ordinary, and the judge
sustained the demurrer on the ground that "the court of ordi-
nary has no jurisdiction to try claim cases or titles to land."
To this ruling the caveator excepted.

The paper filed by H. C. Durham Jr. in the court of ordinary can not be properly considered a claim by him to the property described in the return of the appraisers. It is true that it distinctly avers that the property did not belong to the estate of the deceased, but it nowhere declares that the title is in him. It was treated, however, in the court of ordinary and in the superior court as a claim to the property, and the case was presented here on the same theory. While we would be authorized to affirm the judgment dismissing the caveat, on the ground that, so far as anything appears therein, the caveator was a mere interloper setting up no title in himself and simply attacking the title of somebody else, we will nevertheless deal with the case as it was dealt with in the court below. So dealing with it, we think the demurrer was properly sustained. Three questions were raised by the caveat. Did the estate of the deceased have title to the personal property described in the return of the appraisers? Did the estate have title to the real property therein described? Was the caveator indebted to the estate of the deceased upon the account therein referred to? Neither the ordinary nor the court of ordinary has, under the law of this State, jurisdiction to try cases involving the title to property either real or personal, or to decide questions arising between the representatives of estates of decedents and persons who may be indebted to the same. Civil Code, §§ 5870, 4951, 4232. Parties may by consent submit such questions to the decision of the ordinary, but when this is done the decision made is not a judgment of the court of ordinary, but simply an award by the individual who is ordinary, as an arbitrator between the parties. To make the ordinary such an arbitrator, however, it requires the assent of both parties; and when any person attempts to submit either to the ordinary or the court of ordinary any matter not within the jurisdiction of either, the opposite party has the right to raise the question of jurisdiction, and when so raised, the ordinary has no alternative except to declare his want of jurisdiction in the matter. If no objection had been made to the caveat in the present case and the ordinary had passed upon the questions therein raised, the parties would be bound by the decision, but when objection was raised

the ordinary did right to dismiss the caveat. When this was done the return of the appraisers should have been approved. Unless by mutual consent the parties otherwise determine, the question whether the realty described in the return was the property of the deceased or of the caveator will have to be settled in a proper proceeding in the superior court; the question as to whether the personalty belonged to the estate of the deceased or to the caveators must be settled in some court having jurisdiction to try title to personalty; and the question as to whether the caveator was indebted to the estate of the deceased will have to be settled in a suit by the widow upon the account in some court having jurisdiction to try questions of this character. Our attention has not been called to, nor have we been able to find, any decision of this court in which it was ruled either that the ordinary or the court of ordinary could pass upon questions of this character when either party objected to his making a decision in the matter.

In *Harris* v. *Colquit*, 44 *Ga.* 663, it was held: "Parties who appear before the ordinary to contest the granting of a homestead are concluded by the judgment upon all questions which it is necessary for the applicant to prove, and upon all questions which the statute provides the creditors may make; but they are not concluded upon questions over which the ordinary has no jurisdiction, unless it appears that they actually made such questions, and that they were in fact decided." Judge McCay in the opinion says: "The act of 1868, providing for laying off the homestead, allows any creditor to appear and make certain objections to the proceeding. Literally, the only issue provided for is, upon the estimate of value by the commissioners. But, in the nature of things, the objector may make a point upon any of the material statements necessary to be made; as, residence, that applicant is the head of a family, etc. We have held, also, that, if an objector does appear and set up that he has such a debt as that the applicant can include certain specific property in his schedule, and the applicant joins issue and the case is tried, this concludes the parties. But this is only when the issue is made and accepted. Either party may object, since this question does not come within any

of the provisions of the homestead.   The homestead, when set apart, is subject to certain debts, nevertheless, and it is only when, by mutual consent, this question has been actually tried and passed upon by the ordinary, that the judgment at all affects the right of the creditor to go on.   The judgment concludes on all the facts necessary to appear before the court can give a judgment.   But the title to the land, and whether, notwithstanding the judgment setting aside the homestead, the debt of the objector may not still levy on it, is not an issue in the case, unless the parties actually make it, and it is decided. In that case the parties have by mutual consent waived the objection to the jurisdiction, and a judgment binds them."

Of course parties can not by consent confer jurisdiction upon the ordinary or the court of ordinary, and the effect of the decision made in the case just cited is, not that the ordinary can be given jurisdiction to decide anything as a court, but that the individual who is the presiding officer of that court may become by consent of the parties their chosen arbitrator to decide any question submitted to his decision.   In *Home B. & L. Asso.* v. *Cherry,* 62 *Ga.* 269, Chief Justice Warner says: "The ordinary has no jurisdiction to hear and determine the question of title to real estate."   In *Robson* v. *Harris,* 82 *Ga.* 153, it appears that the widow of Harris, who was a tenant of Robson, applied for a year's support.   The appraisers returned a schedule of property which included a one-half interest in a crop in which the deceased husband was interested.   Robson filed objections to the return of the appraisers, setting up title to the crop under a contract with Harris as his cropper.   His objections were overruled, and an appeal was made to the superior court.   On the trial in that court the question arose as to whether the burden of proof was upon the applicant or the objector.   In discussing this question Chief Justice Bleckley in the opinion says: "The return of the appraisers was *prima facie* correct, and it was for the objector to attack it by evidence.   It needed no vindication until after thus attacked.   Mere objections to it, unsupported by evidence, counted for nothing.   In raising the issue of title to the crop in this proceeding, Robson was a plaintiff, not a defendant.   The widow could not recover

and did not seek to recover the crop from him by having it set apart as a year's support. If it was not the property of her husband's estate without this proceeding, it could not become so by reason of the proceeding had not Robson voluntarily come in to raise that issue. For her to have a year's support set apart out of his property would have been no prejudice to his title. His rights as owner would have been the same afterwards as they were before." In the case just cited no question of jurisdiction was raised by either party; nor was any question raised as to whether an appeal could properly be taken from the decision of the ordinary on the questions which were thus by consent submitted to his decision.

In *Gunn* v. *Pettygrew*, 93 *Ga.* 327, it was held: " On the trial of objections to a year's support, as provided for by the act of October 9, 1885, where the sole issue is as to title to the property set apart, a verdict finding for the applicant against the caveator a sum of money is contrary to law. The only legal finding in such a case is for or against the applicant on the question of title to the property in controversy." No question of jurisdiction was raised in that case, either in the court of ordinary or in the superior court; nor was any question made as to whether an appeal could be taken from the decision of the ordinary in the matter. The case, therefore, is not authority on the question now under consideration. In *Smith* v. *Smith*, 101 *Ga.* 296, it was sought to bind certain persons, who were the heirs at law of the deceased, by a judgment setting apart a year's support to his widow, when such persons did not claim title to the property as heirs at law, but were setting up an adverse claim to the estate. They had filed no objection to the return of the appraisers setting apart the year's support; and it was there held that the judgment of the ordinary bound them only so far as they were interested in the property as heirs, but did not preclude them from setting up an independent title against the widow; it being then said that "no one interested in the property adversely to the estate of the deceased is compelled to go into the court of ordinary and interpose an objection of this character; but if they do, they are bound by the adjudication of the ordinary on the question." While some of the

language used in the cases cited was probably not entirely ac-curate and may have been misleading, an analysis of all of the rulings will show that the conclusion reached by us in the pres-ent case is not in conflict with any of these decisions.    That con-clusion is, that the court of ordinary has no jurisdiction to try questions of title to property; but if these questions are pre-sented to the presiding officer of that court and are passed upon without objection from either party, the decision rendered is binding upon the parties submitting the question to his judg-ment; not, however, because it is a judgment of the court of ordinary, but because he has a right as an individual, when parties consent thereto, to determine, if he sees proper, any question submitted to him.

*Judgment affirmed.    All the Justices concurring.*